690 A.2d 186

**Kimberly DAVIS, Appellant,**

v.

**BERWIND CORPORATION, Bepex Corporation, and Boldt Industries, Inc., Appellees.**

Supreme Court of Pennsylvania.

Reargued Jan. 25, 1996.

Decided Feb. 24, 1997.

Bruce Baron, Donald E. Matusow, Philadelphia, for Kimberly Davis.

Gerald A. McHugh, Jr., Philadelphia, for Amicus - Pa. Trial Lawyers Assoc.

Gary B. Cutler, Philadelphia, for Berwind Corp.

Angelo L. Scaricamazza, for Boldt Indus.

James M. Beck, for Amicus - Pa. Liability Advisory Council.

Before NIX, C.J., and FLAHERTY, ZAPPALA, CAPPY, CASTILLE and NEWMAN, JJ.

### OPINION OF THE COURT

ZAPPALA, Justice.

In this product liability action, the Superior Court vacated the judgment of the Court of Common Pleas of Philadelphia County and granted a judgment notwithstanding the verdict (j.n.o.v) in favor of Appellees, Berwind Corporation and Bepex Corporation.[1] We affirm the judgment of the Superior Court and conclude that as a matter of law, Appellant failed to state a cause of action in strict liability based upon an inadequate warning.

The record establishes that Kimberly Davis, Appellant, was employed as a quality control inspector for Keystone Equity Meats (Equity), a company which supplies hamburger patties to McDonald's restaurants. One of Appellant's duties was to operate a blender in a meat formulation system Equity had

---

1. Boldt Industries, Inc. was not party to the appeal to the Superior Court, and is not a party in the instant proceeding.

purchased from Boldt. The Boldt system incorporated blenders manufactured by Bepex.[2]

Appellees' blenders were sold with interlocking electropneumatic safety devices. A dual valve system required the simultaneous use of both of the operator's hands, thus keeping the hands away from the rotating blades. Also, the blender was equipped with an interlocking door which was designed to act as a guard, automatically blocking access to the area where meat was being ground if either of the operator's hands was removed from its place on the control panel. The blender, however, could operate without the safety devices, and the safety devices were shipped separately from the blender.

Appellees included on the blender a visible warning reading "DANGER, KEEP FINGERS OUT OF DOOR OPENINGS." The operating manual provided to Equity also warned against removing the interlocking safety device:

> Do not operate unless guards and safety devices are in place and are working. The electropneumatic control is considered an integral part of blender and should not be removed or modified to preclude the safety to the interlock feature....

R. 927a.

Shortly after Equity installed the meat formulation equipment, it removed the interlocking safety devices from the blenders. With the safety devices removed, employees could operate two blenders at one time and therefore increase production without increasing labor costs.

On the day of the accident, Appellant shut off the power to one of the blenders she was operating. Approximately ten seconds later, she used her right hand to clear the blender's discharge chute of meat which had accumulated in the blender's hopper. Even though the blender's power had been turned off, the blades continued to turn. Appellant's right hand came into contact with the rotating blades, and three of her fingers were severed. Appellant testified at trial that had

2. At the time of the sale of the blender, Bepex was owned by Berwind. Both companies shall hereinafter be referred to as "Appellees."

she known that the blades would continue to rotate after the machine had been turned off, she never would have put her hand near the doors. Appellant also conceded at trial that had the electropneumatic safety devices been in place, the accident would not have occurred.

Appellant's sole claim against Appellees was that they were strictly liable under § 402A of the *Restatement (Second) of Torts*[3] for failing to warn users of the propensity of the mixing blades to rotate after the blender had been turned off. Appellant contended that this warning was necessary to make the blender safe because the alterations made to the product by Appellant's employer were foreseeable.

The jury determined that Boldt was not liable for Appellant's injuries, and that Appellees were liable. The jury awarded damages in the amount of $400,000.00. Both parties filed post-trial motions. The trial court granted Appellant's request for delay damages in the amount of $213,725.92, and denied Appellees' posttrial motions. It concluded that there was substantial evidence for the jury to conclude that the alteration to the product, i.e., the removal of the safety device, was foreseeable.

The Superior Court reversed and entered j.n.o.v. on the basis that the case should not have been submitted to the jury as a matter of law. It held that Appellees did what was required of a responsible manufacturer by providing a safety device, affixing warnings on the discharge doors and providing

3. Section 402A. Special Liability of Seller of Product for Physical Harm to User or Consumer.
 (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
 (a) the seller is engaged in the business of selling such a product, and
 (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
 (2) The rule stated in Subsection (1) applies although
 (a) the seller has exercised all possible care in the preparation and a sale of his product, and
 (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

additional warnings cautioning against the removal of the safety device in the product manual. The Superior Court further held that where the product endures substantial post-sale alteration contrary to the warnings of the manufacturer, the alteration rises to the level of an intervening or superseding cause of the injury, breaking the chain of causation and relieving the manufacturer of liability. *Davis,* 433 Pa.Super. at 363, 640 A.2d at 1300.

 Appellant filed a petition for allowance of appeal with our Court, and we granted allocatur. In reviewing an entry of a judgment n.o.v., we note that

[t]here are two bases upon which a judgment n.o.v. can be entered: one, the movant is entitled to judgment as a matter of law, and/or two, the evidence was such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant. With the first, a court reviews the record and concludes that even with all factual inferences decided adverse to the movant the law nonetheless requires a verdict in his favor, whereas with the second, the court reviews the evidentiary record and concludes that the evidence was such that a verdict for the movant was beyond peradventure.

*Moure v. Raeuchle,* 529 Pa. 394, 402–403, 604 A.2d 1003, 1007 (1992) (citations omitted).

 In their appeal to the Superior Court, Appellees successfully premised their claim to j.n.o.v. on the basis that they were entitled to judgment as a matter of law. In examining this determination, our scope of review is plenary, as it is with any review of questions of law. *Phillips v. A–Best Products Co.,* 542 Pa. 124, 130, 665 A.2d 1167, 1170 (1995).

 We begin our analysis of whether Appellees are entitled to judgment as a matter of law with a discussion of § 402A, which was adopted by our Court in *Webb v. Zern,* 422 Pa. 424, 220 A.2d 853 (1966). Section 402A reflects the social policy that a seller or manufacturer is best able to shoulder the costs and to administer the risks involved when a product is released into the stream of commerce. Having derived a

benefit from engaging in business, manufacturers and sellers are particularly able to allocate the losses incurred through cost increases and insurance. *Walton v. Avco Corporation,* 530 Pa. 568, 575, 610 A.2d 454, 458 (1992).

Nevertheless, it is not the purpose of § 402A to impose absolute liability. A manufacturer is a guarantor of its product, not an insurer. See *Azzarello v. Black Brothers Co., Inc.,* 480 Pa. 547, 553, 391 A.2d 1020, 1023–1024 (1978). To recover under § 402A, a plaintiff must establish that the product was defective, that the defect was a proximate cause of the plaintiff's injuries, and that the defect causing the injury existed at the time the product left the seller's hands. *Berkebile v. Brantly Helicopter Corporation,* 462 Pa. 83, 93–94, 337 A.2d 893, 899 (1975). The seller is not liable if a safe product is made unsafe by subsequent changes. *Id.* Where the product has reached the user or consumer with substantial change, the question becomes whether the manufacturer could have reasonably expected or foreseen such an alteration of its product. *Eck v. Powermatic Houdaille,* 364 Pa.Super. 178, 527 A.2d 1012 (1987).

A dangerous product can be considered "defective" for strict liability purposes if it is distributed without sufficient warnings to notify the ultimate user of the dangers inherent in the product. *Mackowick v. Westinghouse Electric Corporation,* 525 Pa. 52, 575 A.2d 100 (1990). The determination of whether a warning is adequate and whether a product is "defective" due to inadequate warnings are questions of law to be answered by the trial judge. *Id.* at 56, 575 A.2d at 102.

Appellant's theory of liability, inadequate warnings, is premised on the argument that Appellees should have anticipated the removal of the safety device and, therefore, should have provided additional warnings. Appellant contends that the warning on the blender, which stated, "DANGER, KEEP FINGERS OUT OF DOOR OPENINGS," was inadequate to warn the user that the blades would continue to rotate after the power was terminated.

■ Appellant's initial error lies in the characterization of the "danger" as being the continued rotation of the blades of the meat blender after the power had been turned off. Instead, the danger to be cautioned against is the placement of the operator's hands at any position near the blades. An instruction concerning the continued rotation of the blades becomes necessary only if the operator blatantly ignores the specific warning to keep fingers away from the door openings. Appellant is in effect suggesting that we require a manufacturer to warn against dangers that may arise if the stated warnings are not heeded. Such requirement is unreasonable and unwarranted since the law presumes that warnings will be obeyed. *See Baldino v. Castagna,* 505 Pa. 239, 478 A.2d 807 (1984) (where a warning is given, the seller may reasonably assume that it will be read and heeded); Comment j of Section 402A of the Restatement (Second) of Torts.

■ In a similar argument, Appellant maintains that the Superior Court erred in finding that the removal of the safety device by Appellant's employer constituted a superseding cause of Appellant's injury. This claim is likewise meritless. Disregarding the warnings stated in the owner's manual and affixed to the machine itself, Appellant's employer removed the safety devices so that a single employee could operate more than one machine at a time. This clearly constitutes a substantial change in the condition in which the product was sold that relieves the manufacturer of liability for Appellant's injury.

Appellant attempts to avoid this result, however, by contending that it was foreseeable that the meat blender could be operated without the interlocking safety device. As evidence of foreseeability, Appellant asserts the following: the instruction manual accompanying the blender cautioned against removing the safety device; the hand controls were shipped separately from the blender; the safety device was incompatible with Equity's procedure of two machines being operated by one person; and, the warnings placed on the blender were cogent only if the safety device was removed. We find untenable the proposition that a manufacturer must anticipate

that a specific warning *not* to operate a product without a safety device indicates to a user that the product *could,* in fact, be operated without the safety feature. Such conclusion defies common sense. It also renders warnings of any nature meaningless since the manufacturer must anticipate that the user will engage in the precise conduct which the warning cautions against.[4]

In summary, notwithstanding the removal of the safety device, the warning on the blender itself clearly instructed the operator to "KEEP FINGERS OUT OF DOOR OPEN-INGS." This warning addressed the danger and was sufficient to caution the operator. Moreover, an integral part of the product was an interlocking electropneumatic safety device and the product's manual cautioned against its removal. The fact that Appellant's employer chose to disregard such warning does not render the product defective. Accordingly, the Superior Court properly concluded that Appellees were entitled to judgment as a matter of law.[5]

NIGRO, J., did not participate in the consideration or decision of this case.

NIX, former C.J., did not participate in the decision of this case.

4. Appellant's remaining assertions also do not lead to the conclusion that Appellees should have foreseen the product alteration. The fact that Equity had a procedure of having one person operate two machines prior to purchasing Appellee's blender does not give Equity reason to ignore the warning cautioning against such procedure when using Appellee's machine. It also has nothing to do with Appellee's ability to foresee the product alteration. Further, the fact that the safety device was shipped separately from other components of the blender is not dispositive of the issue.

5. Appellant also argues that the social policy underlying product liability requires that the risk of loss of injury be borne by Appellees as they are in a better position to protect themselves against the loss. We disagree. The imposition of strict liability on Appellees in the instant case would be a futile attempt to promote the distribution of safe products when it is not the manufacturer but the purchaser who rendered the product dangerous. The manufacturer should not be responsible for the employer's intentional removal of the safety device merely because the purchaser/employer is limited in liability to that recoverable in a workers' compensation proceeding.

CAPPY, J., files a dissenting opinion in which NEWMAN, J., joins.

NEWMAN, J., files a dissenting opinion.

CAPPY, Justice, dissenting:

As I am unpersuaded by the majority's reasoning concerning both issues raised in this case, I must respectfully dissent.

First, I cannot agree with the majority that Appellant's failure to warn claim must fail as a matter of law. To establish that a product was defective due to a failure to warn, a plaintiff must show that the product was "distributed without sufficient warnings to notify the ultimate user of the dangers inherent in the product." *Mackowick v. Westinghouse Electric*, 525 Pa. 52, 56, 575 A.2d 100, 102 (1990). Furthermore, the warnings will be considered insufficient if they do not warn of *unobvious* dangers. *Id.*

In the matter *sub judice*, the danger was that the blades in the blender would continue to rotate a full ten seconds after power to the machine had been terminated. I believe that such a danger is not readily obvious.[1] Absent a simple warning of this danger, a user of the product would be reasonably justified in believing that once the power had been shut off, the blades would cease rotating and the machine would no longer pose a threat to its user.

Yet, the majority holds that because Appellees placed the warning "DANGER, KEEP FINGERS OUT OF DOOR OPENINGS" on the blender, then Appellees are relieved of liability in this instance. Although the existence of this warning is undeniable, the perception of this warning as being *adequate* is not. The warning provided by Appellees did nothing to inform the user of the hidden danger that the blades would continue to rotate ten seconds after the power had been terminated. This warning did not apprise the user

---

1. I note that even Appellees' product engineering manager would agree with me on this point. At trial, he testified that he thought it would be appropriate to place a warning on the blender that the blades would not cease rotating immediately upon termination of power. R.R. at 277a–278a.

that the machine was a danger regardless of whether the power needed to operate the machine was, in fact, utilized. In my view, it is unacceptable to conclude that in today's mechanized world, a machine which, in fact, poses a danger to its user even when power is not being supplied to it, should not be the subject of a specific warning. I suspect that anyone would conclude that if the machine was not receiving the power needed for its operation, then the latent danger which was the subject of the warning given would be obviated. In a mechanized world, it is clear to me that based on the experience an average person collects during his or her life and the warning that was placed on the machine, any user would conclude that the danger in the machine is directly related to the machine being in operation. I would hold that where a machine poses a danger when it is *turned off,* then that danger is an unobvious one against which the user needs to be specifically warned. Thus, I am unable to agree with the majority that the warning here, as a matter of law, was adequate and that Appellees are entitled to a j.n.o.v. on this basis.

I am also unable to join that portion of the majority's opinion which discusses the issue of superseding causation for two reasons. First, I believe that the majority's analysis of the superseding cause issue is unnecessary as it is *dicta.* The majority concludes that as a matter of law, Appellees cannot be held liable because the product was not defective. Thus, any need to analyze whether Appellees' liability was severed by a superseding cause has been eliminated.

Second, I respectfully suggest that the majority's reasoning in *dicta* is flawed. At common law, a superseding cause is "[t]hat occurrence or force which not only intervenes, but which also breaks the chain of causation between the initial occurrence and the ultimate effect . . .," thus relieving the defendant of liability. *Black's Law Dictionary* 152 (6th ed. 1991). In Pennsylvania, this court has declared that the proper focus in determining whether an intervening act is a superseding cause is "on whether the act was so extraordinary as not to be reasonably foreseeable." *Powell v. Drumheller,*

539 Pa. 484, 495, 653 A.2d 619, 624 (1995). "A determination of whether an act is so extraordinary as to constitute a superseding cause is normally one to be made by the jury." *Id.*

As this court is reviewing a j.n.o.v., the standard here is whether Appellees are entitled to a judgment as a matter of law on this point even with all factual inferences decided adverse to Appellees. *Moure v. Raeuchle*, 529 Pa. 394, 402–403, 604 A.2d 1003, 1007 (1992). When taken in the light most favorable to Appellant, the evidence shows that Equity's removal of the safety device was not so "extraordinary as not to be reasonably foreseeable." First, the controls for the interlocking safety device were shipped separately from the unit and had to be installed separately by the purchaser. R.R. 354a, 396a. This certainly raised the possibility that the blenders would be operated without the safety device. Second, the blender's manuals contained a specific warning not to remove or to operate the blender without the interlocking device, thereby indicating that the blender could operate without the safety device. R.R. 927a. Third, Appellees' engineer stated that Appellees had a concern that the safety device might be tampered with and that concern is what precipitated the warning in the manual. R.R. 939a–940a.

This evidence was clearly sufficient for the jury to decide that the alteration was foreseeable and, by the verdict it rendered, it determined that the removal of the safety device was foreseeable by Appellees. The majority fails to provide a persuasive explanation as to why it holds that the determination by the jury that Equity's act was *not* a superseding cause must be wrested from that jury in violation of the concepts articulated by *Powell.*

For the foregoing reasons, I respectfully dissent.

NEWMAN, J., joins this dissenting opinion.

NEWMAN, Justice, dissenting.

I join in Mr. Justice Cappy's dissenting opinion, however, I write separately to emphasize the inadequacy of the warning for the intended user of the product.

As set forth, in part, in the Majority Opinion, the relevant facts reveal that Kimberly Davis (Appellant), was a quality control inspector for Keystone Equity Meats (Equity). Her duties included the operation of two blenders, manufactured by Bepex Corporation and Berwind Corporation (Appellees). Each blender had the capacity to mix 2,000 pounds of meat at one time. The blenders mixed lean and fat meats into regulation quality. Appellant was responsible for testing the meat in the blenders to assure that it met certain fat content specifications. Once the specifications were met, Appellant would operate each blender on its discharge mode to release the meat into a hopper where it would be carried on a conveyor belt to the next phase of processing.[1] Because Equity had removed an interlocking safety device from the blenders, an operator, like Appellant, did not have to use both hands to depress the valves that opened the discharge doors to release the meat. The purpose of the safety device was to prevent an operator's hands from coming anywhere near the rotating blender blades. Without the safety device, the discharge doors on the blenders would remain open until the operator returned the levers to the closed position.

On July 16, 1985, while discharging meat from a blender, Appellant noticed that meat was accumulating on the conveyor. It had piled up on the conveyor to the level of the blender's discharge doors. Because the levers held the discharge doors open, Appellant was exposed to the risk of the rotating blades. She then pushed the button to stop the mixing blades, turned off the conveyor, and reached toward the meat. Her right hand came into contact with the continually rotating blender blades, which traumatically severed her index, ring and middle fingers.

I agree with Mr. Justice Cappy that the evidence was sufficient for a jury to conclude that the removal of the safety

1. As alleged by Appellant, she would depress levers to open doors on the side of the blender to allow the meat to fall onto a conveyor that would carry the meat to the next processing stage. It was critical for Appellant to maintain a continuous flow of meat because all subsequent stages of the production line were dependant on the availability of the blended meat.

device by Equity was not so extraordinary to be unforeseeable to Appellees and, therefore, was not a superseding cause of Appellant's injuries. *See Sweitzer v. Dempster Systems,* 372 Pa.Super. 449, 539 A.2d 880 (1988); *Eck v. Powermatic Houdaille,* 364 Pa.Super. 178, 527 A.2d 1012 (1987). When removal of the safety device would allow an employee in a production line to operate more than one blender at a time, thus increasing productivity, it is particularly significant that Appellees did not permanently attach the safety device to the blender, but shipped it separately for the employer to install, and that Appellees did not design the blender so that it would not operate absent the safety device. Because the removal of the safety device exposed the user to the risk of the rotating blades, the next question is whether Appellees' warning was inadequate for failing to alert the user that the blades would continue to rotate after turning off the power.

It is well-settled that a product may be considered defective for strict liability purposes absent adequate warnings to the ultimate user concerning dangers inherent in the product. *Mackowick v. Westinghouse Electric Corp.,* 525 Pa. 52, 575 A.2d 100 (1990).

> The seller must provide with the product every element necessary to make it safe for use. One such element may be warnings and/or instructions concerning use of the product. A seller must give such warning and instructions as are required to inform the user or consumer of the possible risks and inherent limitations of his product. Restatement (Second) of Torts § 402A, comment h.

*Berkebile v. Brantly Helicopter Corp.,* 462 Pa. 83, 100, 337 A.2d 893, 902 (1975).

As demonstrated in *Mackowick,* the adequacy of a warning is measured in relation to the knowledge or training of the intended user. *See also Ellis v. Chicago Bridge & Iron Co.,* 376 Pa.Super. 220, 545 A.2d 906 (1988)(the necessity of a warning depends in part on the knowledge of the ordinary consumer, with knowledge common to the community as to the characteristics of the product). In *Mackowick,* an electrician was severely burned when he pointed a screwdriver into a live

capacitor, causing the electricity to "arc" to him from the capacitor.[2] The capacitor carried a warning concerning the danger of live, uninsulated fuses and instructed the user to ground the electricity before handling it. We rejected the electrician's claim that the warning was insufficient for failing to specifically warn of the danger of electrical arcing inherent in the product. We reasoned that the product was intended to be used only by qualified electricians who would be expected to know of the dangers of arcing in such equipment. There, the plaintiff had thirty years of experience as an electrician and was more than adequately alerted to the danger. Therefore, we concluded that the manufacturer had no duty to provide a warning concerning the propensity of electricity to arc from the product.

In contrast, in *Berkebile,* we allowed a plaintiff to pursue a claim against a helicopter manufacturer for inadequate warnings and instructions concerning the operation of an on-board safety device. In *Berkebile,* the manufacturer marketed a particular helicopter model as easy to fly for both beginning and professional pilots. Berkebile, a businessman, purchased one. While flying alone, he was killed when his helicopter crashed after experiencing engine failure. The manufacturer had provided certain instructions concerning activation of the safety device in case of engine failure, but had failed to provide a specific warning concerning the need to activate the safety device almost instantaneously. We reversed the jury verdict for the manufacturer and remanded for a determination, inter alia, of whether the warnings were sufficient to alert Berkebile of the urgency of the situation.

Following the rationale of *Mackowick* and *Berkebile,* I believe that Appellees provided an inadequate warning to the ultimate user of their product, an employee on-line in a meat processing plant. As a matter of common sense, Appellant would have known that while injury may result from contact

2. "Arcing" is a principle of electricity that occurs when a grounding instrument or object is close enough to the electric charge so that the electricity explosively flashes to the instrument or object and flows through it. *Mackowick.*

with the still blade of a blender, a greater risk of serious injury arises from the rotating blades. As noted by Mr. Justice Cappy, common experience would instruct the average person, such as Appellant, that the danger of rotating blades arises from operation of the machinery. Here, however, the grave danger posed by the rotating blades existed after the blender was no longer in operation. Appellant, in fact, was unaware that the blades would continue to rotate after she turned off the power. Appellees should not have presumed that an intended user, such as Appellant, would have anticipated a danger contrary to common experience. The warning, "DANGER, KEEP FINGERS OUT OF DOOR OPENINGS," failed to alert her of the specific, inobvious danger, when the power was off, of the continued rotation of the blades. Thus, after depressing the "stop" button on the blender, Appellant was not informed of the extent of the danger she faced as she reached her hands toward the discharge doors to release accumulated meat. As we stated in *Berkebile*, "a greater degree of danger requires a greater degree of protection." *Id.* at 102, 337 A.2d at 902. Here, however, the warning was inadequate for failing to warn of the danger posed by the continued rotation of the blades.

The Majority states that an additional warning concerning the continued rotation of the blades only becomes necessary if the user blatantly ignores the warning to keep his or her fingers away from the door openings. Citing *Baldino v. Castagna*, 505 Pa. 239, 478 A.2d 807 (1984), the Majority concludes that where, as here, the manufacturer provides a warning, the manufacturer may reasonably assume that the user will heed it. *Baldino*, a negligence action, does not, however, stand for the proposition that an inadequate warning may relieve a manufacturer of liability. Instead, *Baldino* instructs that whether a user's failure to heed a warning absolves a manufacturer of liability depends on the adequacy of the warning to alert the user of the particular dangers inherent to the product. Here, the manufacturer's warning failed to inform the user of all inobvious risks inherent to the product. Therefore, the user may have proceeded in disre-

gard of certain known risks, i.e., the danger of still blades, but without knowledge of the particular danger that caused her injury, i.e., the danger of rotating blades. As a result, the user's failure to heed the inadequate warning should not absolve the manufacturer from liability.

Because the evidence supports a determination that Appellees failed to provide an adequate warning, thus, rendering the product defective, I respectfully dissent.