NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 11-3978

TIMOTHY K. REESE; MARY K. REESE,

Appellants

v.

FORD MOTOR COMPANY; FAULKER-CIOCCA FORD MERCURY

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 2-09-cv-02948)
District Judge: Honorable Thomas N. O'Neill, Jr.

No. 11-3979

TIMOTHY K. REESE; MARY K. REESE,

Appellants

v.

MAGARINO FORD-MERCURY, INC., d/b/a MAGARINO FORD-MERCURY, LLC

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 2-10-cv-01181)
District Judge: Honorable Thomas N. O'Neill, Jr.

Submitted Under Third Circuit LAR 34.1(a)
September 18, 2012

Before: AMBRO, GREENAWAY, JR., and TASHIMA[*], Circuit Judges

(Opinion filed:  September 28, 2012)

_____

OPINION

_____

AMBRO, Circuit Judge

This appeal arises from two consolidated suits filed by Timothy and Mary Reese

(the "Reeses") against an automobile manufacturer, Ford Motor Company ("Ford"), and

two automobile dealerships, Faulkner-Ciocca Ford Mercury ("Faulkner") and Magarino

Ford-Mercury ("Magarino").  The Reeses allege the following claims: strict products

liability and breach of implied warranty of merchantability against Faulkner; breach of

contract against Ford; and negligence against Faulkner and Magarino.  Following

discovery, the District Court granted summary judgment against the Reeses.  They

appeal.[1]  We reverse the Court's ruling as to the Reeses' strict products liability and

implied warranty claims, and affirm the remainder of its ruling.

### I.  Background

In 2006 the Reeses purchased from Faulkner a new Mercury Monterey

manufactured by Ford.  Because Faulkner did not have a car in its inventory that met the

_____

[*] Honorable A. Wallace Tashima, Senior Circuit Judge for the Ninth Circuit Court of
Appeals, sitting by designation.

[1] The District Court had jurisdiction under 28 U.S.C. § 1332(a)(1).  Our jurisdiction is
under 28 U.S.C. § 1291.

2

Reeses' specifications, it obtained the car from another dealership, Magarino, and delivered it to the Reeses. The Reeses owned the vehicle for approximately three years, during which time Timothy Reese either serviced the car himself or brought it to Pep Boys, where he was an employee. In May 2009 the car caught on fire, which spread to and damaged the Reeses' home. For purposes of this appeal, it is undisputed that the fire was caused by aftermarket wiring installed in the vehicle. The parties do dispute, however, who was in possession of the vehicle when the wiring was installed.

## II. Standard of Review

"Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. In making this determination, we must consider the evidence in the record in the light most favorable to the nonmoving party." *Smith v. City of Allentown*, 589 F.3d 684, 689 (3d Cir. 2009) (citations & internal quotation marks omitted); *see also* Fed. R. Civ. P. 56(a). "We exercise plenary review over summary judgment and we apply the same standard that the lower court should have applied." *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 278 (3d Cir. 2000).

## III. Discussion

### A. Strict Liability and Implied Warranty Claims

The District Court granted summary judgment against the Reeses on their strict liability and implied warranty claims on the ground that they could not show which of the defendants installed the faulty wiring. We agree with the Reeses that the Court was wrong to do so with respect to their claim against Faulkner.

3

Because the District Court sat in diversity, Pennsylvania law governs.  The Pennsylvania Supreme Court has adopted § 402A of the Restatement (Second) of Torts, which imposes strict liability on the purveyor of a product in a defective condition "'unreasonably dangerous to the user or consumer.'"  *Webb v. Zern*, 220 A.2d 853, 854 (Pa. 1966) (quoting Restatement (Second) of Torts § 402A (1965)).  To recover under § 402A, a plaintiff must establish that: (1) the product was defective; (2) the defect was a proximate cause of the plaintiff's injuries; and (3) the defect causing the injury existed at the time the product left the seller's hands.  *David v. Berwind Corp.*, 690 A.2d 186, 190 (Pa. Super. Ct. 1997).  A seller is not liable if a safe product is made unsafe by subsequent changes that were not foreseeable by the seller.  *Id.*

The elements that prove a breach of the implied warranty of merchantability are essentially the same as those to recover on a strict products liability claim.  *See Gumbs v. Int'l Harvester, Inc.*, 718 F.2d 88, 94 (3d Cir. 1983).  "[A] warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind."  13 Pa. Cons. Stat. § 2314(a).  The implied warranty of merchantability serves to protect buyers from loss where the goods purchased are below commercial standards or are unfit for the buyer's purpose.  *See Altronics of Bethlehem, Inc., v. Repco, Inc.*, 957 F.2d 1102, 1105 (3d Cir. 1992).  "In order to be merchantable, goods must be 'fit for the ordinary purposes for which such goods are used.'"  *Id.* (quoting 13 Pa.C.S.A. § 2314(b)(3)).

The District Court determined that the key issue in this case was whether a theory of alternative liability could be applied to shift the burden to each defendant to prove that

4

it was not responsible for installing the defective wiring. *See* Restatement (Second) of Torts § 433B(3) (1965) ("Where the conduct of two or more actors is tortious, and it is proved that harm has been caused to the plaintiff by only one of them, but there is uncertainty as to which one has caused it, the burden is upon each such actor to prove that he has not caused the harm."); *Summers v. Tice*, 199 P.2d 1 (Cal. 1948). Relying on a Pennsylvania Superior Court decision, *Pennfield Corp. v. Meadow Valley Elec., Inc.*, 604 A.2d 1082 (Pa. Super. Ct. 1992), the District Court decided that application of the theory was inappropriate and that the Reeses remained responsible for proving which defendant was responsible for installing the wiring. In *Pennfield*, the plaintiff's injury—the death of over a thousand pigs—was allegedly caused by a defective electrical cable that a maintenance company had installed in the ventilation system in the pigs' shelter. *Id.* at 1083-84. Because there was insufficient evidence to determine which of two companies had provided the defective cable, the maintenance company, which sought to join the cable distributors as codefendants, asserted that the burden of proof should be shifted to each distributor to prove that it did not supply the defective wiring. *Id.* at 1085-86. The *Pennfield* court declined to do so on the ground that alternative liability only applies when two actors have acted tortiously and in that case only one of the actors (the company that sold the defective cable) had acted culpably. *Id.*

At least with respect to the Reeses' claims against Faulkner, we believe that the District Court mistakenly viewed the applicability of alternative liability as the dispositive issue. Unlike in *Pennfield*, the Reeses were not allegedly harmed by one of two products that were sold separately by two different distributors. They were allegedly

5

harmed by a single product they purchased from a single dealership due to a defective piece of wiring that was installed in that product at some point along the product distribution chain. In a strict products liability case, sellers are strictly liable for selling a defective product so long as that product was defective when it was transferred from the seller to the plaintiff and the plaintiff's injury was caused by that defect. *Hutchinson v. Penske Truck Leasing Co.*, 876 A.2d 978, 982 (Pa. Super. Ct. 2005) ("For a plaintiff to recover under a strict liability theory, he must prove only that the product at issue was sold in a defective condition, rendering it unreasonably dangerous, and that the defect was the proximate cause of his injuries. . . . In any product liability case grounded in strict liability, the product, and not the manufacturer's conduct, is on trial."). The same is true for merchants accused of breaching the implied warranty of merchantability. *Vlases v. Montgomery Ward & Co.*, 377 F.2d 846, 850 (3d Cir. 1967) ("The entire purpose behind the implied warranty sections of the Code is to hold the seller responsible when inferior goods are passed along to the unsuspecting buyer. What the Code requires is not evidence that the defects should or could have been uncovered by the seller but only that the goods upon delivery were not of a merchantable quality or fit for their particular purpose.").

It is irrelevant whether the Reeses are able to show that it was Faulkner or another entity in the distribution chain that was responsible for making the alteration that rendered the product defective. *See Walton v. Avco Corp.*, 610 A.2d 454, 458 (Pa. 1992) ("The social policy reflected in the imposition of the seller's liability is clear. When a product is released into the stream of commerce, it is the seller or manufacturer who is

6

best able to shoulder the costs and to administer the risks involved. Having derived a benefit from engaging in business, they are particularly able to allocate the losses incurred through cost increases and insurance."). All the Reeses are required to do at trial—assuming the other elements of their claims are satisfied—is to prove that the wiring was installed by the time the car was sold to them by Faulkner.[2]

We believe that there is sufficient evidence in the record to allow the Reeses the chance to make this proof. Timothy Reese testified at his deposition that he only brought the vehicle into Pep Boys for two state inspections and a fuel filter change, that the vehicle required no further maintenance or repairs, and that no aftermarket parts were installed after he purchased it. The Reeses' expert also testified at his deposition that, when he was a mechanic at an automobile dealership, he was occasionally asked to repair cars damaged while in the dealer's possession and that those repairs would not be documented. Although this evidence is hardly compelling (and there is evidence in the record supporting the contrary inference that the aftermarket wiring was installed after the Reeses purchased the vehicle), it is sufficient to create a disputed issue of material fact. A jury may plausibly believe the Reeses' testimony that the aftermarket wiring was

---

[2] Although the District Court noted in passing that the record contains no evidence to show that the vehicle contained the defective wiring when it was purchased by Faulkner, *Reese v. Ford Motor Co.,* C.A. Nos. 09-2948, 10-1181, 2011 WL 4572027, at *3 (E.D. Pa. Oct. 4, 2011), the focus was on whether there was evidence to show which of the three defendants installed the wiring, *id.* at *3 ("Even if the jury were to accept plaintiffs' assertion that neither plaintiffs nor Pep Boys installed the aftermarket wiring, the jury would have no way of knowing who among the three defendants, if any, is liable."); *id.* at *5 ("In the present matter, discovery has concluded and the Reeses cannot point to any evidence showing who among the three defendants installed the aftermarket wiring. . . . Only one defendant could have installed the aftermarket wiring and plaintiffs cannot show that one defendant was more likely than the others to have done so.").

not installed while it was in their or Pep Boys's possession, and infer on the basis of that circumstantial evidence that the product was defective when it was transferred from Faulkner to Reese.

### B. Negligence Claims

The Reeses also challenge the District Court's grant of summary judgment on their negligence claims against Faulkner and Magarino. Under Pennsylvania law, as elsewhere, the elements necessary to prove an action in negligence are:

> (1) the existence of a duty or obligation recognized by law, requiring the actor to conform to a certain standard of conduct; (2) a failure on the part of the defendant to conform to that duty, or a breach thereof; (3) a causal connection between the defendant's breach and the resulting injury; and (4) actual loss or damage suffered by the complainant.

*Atcovitz v. Gulph Mills Tennis Club, Inc.*, 812 A.2d 1218, 1222 (Pa. 2002). Unlike the Reeses' strict liability and implied warranty claims, their negligence claims require them to prove that Faulkner and Magarino acted negligently either in installing or in failing to discover wiring that it should have known to be faulty. The District Court concluded that the Reeses cannot satisfy this burden.

On appeal, the Reeses assert that Magarino likely installed the aftermarket wiring because Ford would not have installed a non-Ford part and Faulkner was only in possession of the car for a short period of time. They also assert that Faulkner should have discovered the faulty wiring during its pre-delivery inspection. However, the Reeses point to no evidence in the record indicating that Magarino's alleged installation of the wiring was careless or that Faulkner's pre-delivery inspection was sub-standard.

8

We thus agree with the District Court's grant of summary judgment in favor of Faulkner and Magarino.

## C. Express Warranty Claim

Finally, the Reeses challenge the District Court's grant of summary judgment on their breach of express warranty claim against Ford. The warranty states unambiguously that it does not cover damages caused by the installation of aftermarket parts. Nonetheless, the Reeses argue that the doctrine of equitable estoppel should bar Ford from relying on this provision because it induced the Reeses into believing the vehicle was comprised completely of Ford parts when in fact that vehicle contained aftermarket wiring. We agree with the District Court that this argument fails.

> Equitable estoppel is a doctrine that prevents one from doing an act differently than the manner in which another was induced by word or deed to expect. A doctrine sounding in equity, equitable estoppel recognizes that an informal promise implied by one's words, deeds or representations which leads another to rely justifiably thereon to his own injury or detriment may be enforced in equity.

*Kreutzer v. Vehicle Cnty Herald Co.*, 747 A.2d 358, 361 (Pa. 2000) (quoting *Novelty Knitting Mills v. Siskind*, 457 A.2d 502, 503 (Pa. 1983)). The Reeses have directed us to no words, deeds or representations by Ford on which they reasonably could have relied. Without that evidence, their breach of express warranty claim is doomed.

\* \* \* \* \*

For these reasons, we affirm the District Court's Order as it relates to the Reeses' negligence claims against Faulkner and Magarino and their express warranty claim

9

against Ford, but reverse and remand the Order as it relates to the Reeses' strict liability and implied warranty of merchantability claims against Faulkner.