J-S36027-15

2015 PA Super 203

| | |
|---|---|
| TREDD BARTON | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| LOWE'S HOME CENTERS, INC., HUSQVARNA CONSUMER OUTDOOR PRODUCTS, NA, INC. AND KOHLER, CO. | |
| Appellees | No. 1814 WDA 2014 |

Appeal from the Order October 3, 2014
In the Court of Common Pleas of Washington County
Civil Division at No(s): 2011-6625

BEFORE:  PANELLA, J., JENKINS, J., and STRASSBURGER, J.[*]

OPINION BY JENKINS, J.:  **FILED SEPTEMBER 24, 2015**

Tredd Barton brought this products liability action against Husqvarna Consumer Outdoor Products, N.A., Inc. ("Husqvarna"), Kohler Co. ("Kohler") and Lowe's Home Centers, Inc. ("Lowe's") (collectively "appellees") after Barton's new lawnmower allegedly caught fire and burned down his barn. The trial court sustained appellees' preliminary objections to Barton's third amended complaint and dismissed it with prejudice for failure to state a cause of action. Barton filed a timely appeal, and both Barton and the trial court complied with Pa.R.A.P. 1925. We reverse and remand for further proceedings.

_____

[*] Retired Senior Judge assigned to the Superior Court.

Barton commenced this action in September 2011 via writ of summons. He reissued the writ in August 2012 and filed his original complaint in April 2013. Lowe's and Husqvarna filed preliminary objections to Barton's original complaint, prompting Barton to file an amended complaint. The trial court sustained preliminary objections of Husqvarna and Lowe's to Barton's amended complaint and directed Barton to file a second amended complaint "alleg[ing] some basis upon which the [appellees'] product was defective." Order, 11/15/13. Subsequently, the trial court sustained all appellees' preliminary objections to Barton's second amended complaint and directed Barton to state his claims with greater specificity and correct other defects. Order, 4/9/14.

Barton filed a third amended complaint (mislabeled as his "second" amended complaint), which is the subject of this appeal. Barton alleged that Husqvarna manufactured and distributed a riding lawnmower which contained an engine manufactured and provided by Kohler. Third Amended Complaint, ¶¶ 11, 23. On June 30, 2010, Lowe's, a retailer, sold a Husqvarna lawnmower to Barton. *Id*., ¶ 5. On July 3, 2010, Barton used the lawnmower for the first time to cut grass on his property and then stored the lawnmower in his barn. *Id*., ¶ 6. Inside the barn, "the engine and/or the riding mower itself caught fire and/or exploded[,] causing the barn to burn down ... [T]he engine ran too hot and melted the fuel lines on the

mower, [which] cause[d] fuel to leak onto the hot engine or muffler and therefore caused the fire ..."[1] **Id**. Based on these allegations, Barton asserted claims of negligence, strict liability and breach of warranty against each defendant.

All appellees filed preliminary objections in the nature of demurrers. The trial court sustained the preliminary objections and dismissed the third amended complaint with prejudice. Barton filed a timely notice of appeal, and both Barton and the trial court complied with Pa.R.A.P. 1925.

Barton raises three issues in this appeal:

Did the trial court commit an error of law or abuse of discretion in granting the appellees' demurrers to [Barton's] strict liability counts when [Barton] alleged, *inter alia*, that the Husqvarna lawnmower he purchased on June 30, 2010 caught fire and/or exploded after its first use on July 3, 2010, and when such fire and/or explosion was expressly attributed by [Barton] to the engine running too hot, which caused melting of the fuel lines and the leakage of fuel?

Did the trial court commit an error of law or abuse of discretion in granting the appellees' demurrers to [Barton's] breach of warranty counts when [Barton] alleged, *inter alia*, that the Husqvarna lawnmower he purchased on June 30, 2010 caught fire and/or exploded after its first use on July 3, 2010, and when such fire and/or explosion would naturally render the Husqvarna incapable of mowing lawns and, thus, unfit for its intended purpose?

_____

[1] The trial court stated in its Pa.R.A.P. 1925(a) opinion that the fire occurred at or around 1:00 a.m. on July 4, 2010, information that is not within the third amended complaint. Therefore, we will not factor this detail into our review of this appeal.

- 3 -

Did the trial court commit an error of law or abuse of discretion in granting the appellees' demurrers to [Barton's] negligence counts when [Barton] alleged, *inter alia*, that the appellees either manufactured, sold, assembled or otherwise placed the Husqvarna riding mower into the stream of commerce, thereby laying the factual predicate for the trial court's recognition of the widely accepted inherent and implied duty all manufacturers and sellers owe to their consumers?

Initially, we note the scope and standard of review applicable to this appeal:

A preliminary objection in the nature of a demurrer is properly granted where the contested pleading is legally insufficient. Preliminary objections in the nature of a demurrer require the court to resolve the issues solely on the basis of the pleadings; no testimony or other evidence outside of the complaint may be considered to dispose of the legal issues presented by the demurrer. All material facts set forth in the pleading and all inferences reasonably deducible therefrom must be admitted as true.

In determining whether the trial court properly sustained preliminary objections, the appellate court must examine the averments in the complaint, together with the documents and exhibits attached thereto, in order to evaluate the sufficiency of the facts averred. The impetus of our inquiry is to determine the legal sufficiency of the complaint and whether the pleading would permit recovery if ultimately proven. This Court will reverse the trial court's decision regarding preliminary objections only where there has been an error of law or abuse of discretion. When sustaining the trial court's ruling will result in the denial of claim or a dismissal of suit, preliminary objections will be sustained only where the case i[s] free and clear of doubt.

Thus, the question presented by the demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible. Where a doubt exists as to whether a demurrer should be sustained, this doubt should be resolved in favor of overruling it.

*Weiley v. Albert Einstein Medical Center*, 51 A.3d 202, 208-09 (Pa.Super.2012) (citations omitted).

Barton first argues that the third amended complaint states a cause of action against the appellees for strict liability, because it alleges the existence of a defect in the lawnmower.[2] We agree.

In *Webb v. Zern*, 220 A.2d 853 (Pa.1966), our Supreme Court formally adopted Section 402A of the Restatement (Second) of Torts as the law governing strict products liability actions. This section provides:

> (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
>
> > (a) the seller is engaged in the business of selling such a product, and
> >
> > (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
>
> (2) The rule stated in Subsection (1) applies although
>
> > (a) the seller has exercised all possible care in the preparation and sale of his product, and
> >
> > (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

---

[2] The third amended complaint includes a strict liability claim against Husqvarna in Count II, against Kohler in Count V and against Lowe's in Count VIII.

Restatement (Second) of Torts, § 402A (1965). To prevail in an action under section 402A, the plaintiff must prove that the product was defective, the defect existed when it left the defendant's hands, and the defect caused the harm. *Riley v. Warren Manufacturing, Inc.*, 688 A.2d 221, 224 (Pa.Super.1997). The threshold inquiry in all products liability cases is whether there is a defect. *Id*. This threshold

> can be crossed ... either by proving a breakdown in the machine or a component thereof, traditionally known as a manufacturing defect; or in cases where there is no breakdown, by proving that the design of the machine results in an unreasonably dangerous product, traditionally known as a design defect.

*Id*. A third doctrine recognized under section 402A is the "failure-to-warn" theory, under which the plaintiff may recover for the defendant's failure to provide adequate instructions to the user on how to use the product as the product was designed. *Weiner v. American Honda Motor Co., Inc.*, 718 A.2d 305, 309 (Pa.Super.1998). "To succeed on a claim of inadequate or lack of warning, a plaintiff must prove that the lack of warning rendered the product unreasonably dangerous and that it was the proximate cause of the injury." *Id*.

The trial court gave the following reasons for dismissing Barton's strict liability claims against all appellees:

> Despite this [c]ourt's order [sustaining preliminary objections to the second amended complaint] directing [Barton] to plead the precise nature of the defect -- whether it was a defect in manufacture or design -- Barton has pled only his 'belief' that the engine runs too hot[,] causing the fuel lines to leak. To begin, the alleged overheating of the engine is not a defect -- it

> is a *symptom* that might indicate a defect, but could also indicate other problems unrelated to a manufacturing or design defect such as insufficient oil levels or a clogged air intake. At any rate, such an averment, even if construed as alleging a defect, is insufficient as a matter of law to sustain a products liability action because, under **Riley**, Barton must specifically plead either a manufacturing or design defect, and by failing to do so -- even after four amendments -- his claim must be dismissed as legally insufficient.

Pa.R.A.P. 1925(a) Opinion, p. 6.

The trial court applied too onerous a standard to Barton's third amended complaint. The trial court seems to suggest that a plaintiff can only have a design defect action or a manufacturing defect action under section 402A, but not both. In fact, it is accepted practice for a plaintiff to proceed under more than one defect theory. **See**, **e.g.**, **Sikkelee v. Precision Airmotive Corporation**, 876 F.Supp.2d 479, 490-92 (M.D.Pa.2012) (applying Pennsylvania law) (plaintiff adduced sufficient evidence to proceed to jury on section 402A claims for both design defect and failure to warn); **Giehl v. Terex Utilities**, 2012 WL 1183719, *9-10 (M.D.Pa., Apr.9, 2012) (applying Pennsylvania law) (denying motion to dismiss design defect and manufacturing defect claims).

We conclude that Barton's third amended complaint expressly alleges design, manufacturing, and failure-to-warn defects against the appellees. The factual averments of this pleading, accepted as true, demonstrate that (1) Barton purchased a Husqvarna lawnmower (with a Kohler engine) from Lowe's; (2) just three days later, he used the lawnmower for the first time to

cut grass on his property and then stored the lawnmower in his barn; (3) later that day, the engine or mower caught fire and/or exploded inside the barn, because the engine ran too hot and melted the fuel lines, causing fuel to leak onto the hot engine or muffler; and (4) the barn burned down. Based on these factual averments, Barton explicitly asserts design, manufacturing and failure-to-warn defects against Husqvarna for failing to "design and/or utilize proper designs or procedures" for "the manufacture, assembly and sale of the riding mower (excluding the engine)", and failing to adequately "inform or warn" users of the riding mower as to proper maintenance, inspection, assembly and repair. Third Amended Complaint, ¶ 9(a, e, f). Similarly, Barton explicitly asserts design, manufacturing and failure-to-warn defects against Kohler for failing to "design and/or utilize proper designs or procedures" for "the manufacture, assembly and sale of the engine", and failing to adequately "inform or warn" users of the riding mower as to proper maintenance, inspection, assembly and repair of the engine. *Id*., ¶ 21(a, e, f). In addition, Barton asserts manufacturing and failure-to-warn defects against Lowe's for "failing to properly assemble and inspect the riding mower, including the engine," and failing to warn purchasers of the mower's inherent design defect, including those in the engine. *Id*., ¶ 30(a, c).[3]

_____

[3] Although paragraphs 9, 21 and 30 are within the negligence counts of the
*(Footnote Continued Next Page)*

These allegations are enough to survive preliminary objections. Experience teaches that when a brand new lawnmower catches fire or explodes after its first use, it could be the result of a defect in its design or manufacture, or in the failure of the retailer or manufacturer to provide proper warnings as to its use or maintenance. A more precise identification of the design defect, manufacturing defect or failure-to-warn defect is a matter for discovery and reports from experts (and perhaps a fire marshal). But in a complaint, it is only necessary to state the material facts "in a concise and summary form." Pa.R.Civ.P. 1019(a). Barton's third amended complaint accomplishes this task by furnishing a concise overview of the defects that he intends to prove.

While the trial court correctly observes that the fire or explosion might have resulted from causes unrelated to a manufacturing or design defect, "such as insufficient oil levels or a clogged air intake," Pa.R.A.P. 1925(b) opinion, at 6, this is no reason to dismiss Barton's case at the pleadings stage. The plaintiff need not rule out all other possible causes of harm in his complaint; he need only allege a cause (or causes) of harm for which the defendant is liable under the law. Barton fulfills this mission by alleging concisely that the appellees are liable under section 402A for various defects in the lawnmower. The possibility that this accident resulted from other

_(Footnote Continued)_ ⎯⎯⎯⎯⎯⎯⎯⎯⎯

third amended complaint, Barton incorporates them by reference into his strict liability counts. Third Amended Complaint, ¶¶ 10, 22, 31.

causes, or that the lawnmower had no defects at all, are issues for the parties to litigate during discovery, at summary judgment, and, if necessary, at trial.[4]

_____

[4] Several other issues require brief attention. Barton argues in his brief that he has the right to proceed under the so-called "malfunction" theory of strict liability, under which the occurrence of a malfunction of machinery in the absence of abnormal use and reasonable secondary causes is circumstantial evidence of a defect within the meaning of section 402A. *Barnish v. KWI Building Co.*, 980 A.2d 535, 541-42 (Pa.2009). Barton has waived his reliance on the malfunction theory by failing to raise it below in response to the appellees' preliminary objections. *Cornerstone Land Development Co. of Pittsburgh LLC v. Wadwell Group*, 959 A.2d 1264, 1270 (Pa.Super.2008) (failure to raise argument in brief in opposition to preliminary objections results in waiver on appeal). Barton also has waived this issue by failing to raise it in his Pa.R.A.P. 1925(b) statement. *Lineberger v. Wyeth*, 894 A.2d 141, 148 (Pa.Super.2006) (failure to include issue in Rule 1925(b) statement waives that issue for purposes of appellate review). We express no opinion whether Barton has the right on remand to file another amended complaint which adds the malfunction theory to his section 402A counts. We leave it to the trial court to address this question if Barton elects to raise it.

Second, in *Tincher v. Omega Flex, Inc.*, 104 A.3d 328 (Pa.2014), our Supreme Court reaffirmed the viability of section 402A and declined to adopt the Restatement (Third) of Torts' treatment of strict products liability. The appellees do not contend that *Tincher* provides any support for their position. Indeed, Kohler states that "the question of retroactivity of *Tincher* is irrelevant to the issues of this case." Brief For Kohler, at 14 n. 2. Because the appellees do not rely on *Tincher*, we will not examine whether it has any bearing on this case. The parties are free to address *Tincher's* relevance, or lack thereof, on remand.

In Barton's second argument on appeal, he contends that the third amended complaint states a cause of action against the appellees for breach of warranty.[5] We agree.

Under Pennsylvania law, contract claims for breach of the implied warranty of merchantability and fitness for a particular purpose may also fall within the sphere of products liability actions. *French v. Commonwealth Associates, Inc.*, 980 A.2d 623, 633 (Pa.Super.2009). In cases involving a breach of the implied warranty of merchantability, any party injured by the defective product may sue any party in the distributive chain. *Id*.

Implied warranties are implied by law to protect buyers from loss where goods purchased are below commercial standards. *Goodman v. PPG Industries, Inc.*, 849 A.2d 1239, 1245 (Pa.Super.2004). The implied warranty of merchantability is codified in Pennsylvania's Commercial Code and provides: "[A] warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." 13 Pa.C.S. § 2314(a). Section 2314 prescribes:

Goods to be merchantable must be at least such as:

(1) pass without objection in the trade under the contract description;
(2) in the case of fungible goods, are of fair average quality within the description;

_____

[5] The third amended complaint includes a breach of warranty claim against Husqvarna in Count III, against Kohler in Count VI and against Lowe's in Count IX.

- 11 -

(3) are fit for the ordinary purposes for which such goods are used;
(4) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved;
(5) are adequately contained, packaged, and labeled as the agreement may require; and
(6) conform to the promises or affirmations of fact made on the container or label if any.

13 Pa.C.S. § 2314(b).  These six factors

do[] not purport to exhaust the meaning of 'merchantable' nor to negate any of its attributes not specifically mentioned in the text of the statute, but arising by usage of trade or through case law. The language used is 'must be at least such as ...,' and the intention is to leave open other possible attributes of merchantability.

13 Pa.C.S. § 2314, Comment, ¶ 6.

The concept of merchantability does not require that the goods be of

the best quality or the "best obtainable," but it does require that

they have an inherent soundness which makes them suitable for the purpose for which they are designed, that they be free from significant defects, that they perform in the way that goods of that kind should perform, and that they be of reasonable quality within expected variations and for the ordinary purpose for which they are used.

*Gall by Gall v. Allegheny County Health Department*, 555 A.2d 786,

789 (Pa.1989) (citations omitted).

The third amended complaint alleges that the lawnmower was not

merchantable under section 2314(b) because it burst into flames after its

first use.  Third Amended Complaint, ¶¶ 19, 28, 37.  More specifically, the

third amended complaint alleges that the lawnmower was "not of fair

- 12 -

average quality", "not fit for its ordinary purpose," and not of "even kind and quality" in violation of subsections 2314(b)(2), (3) and (4), respectively. The trial court justified its dismissal of these claims as follows:

> Barton has not pled that the mower was unfit to cut grass, the ordinary purpose for which such a good is used ... He also has not pled that the mower suffers from any legally cognizable defect, beyond his belief that the engine runs too hot. Rather, he asks us to infer that the mower was unmerchantable because his barn burned down while the mower was inside, even though he has not identified a particular defect to which he can attribute the blaze. Because he has failed to plead that the mower was defective or unfit for its ordinary purpose, this claim must be dismissed as legally insufficient.

Pa.R.A.P. 1925(a) Opinion, at 7.

We detect two errors in this analysis. First, as discussed in the context of Barton's section 402A claims, the third amended complaint adequately identifies design, manufacturing and failure-to-warn defects in the lawnmower. Second, the trial court defines the lawnmower's "ordinary purpose" too narrowly. Implicit in this standard is that a good "perform[s] in the way that goods of that kind should perform" and is "of reasonable quality." *Gall*, 555 A.2d at 789. It certainly is reasonable for a purchaser to expect a lawnmower to cut grass efficiently, but it also is reasonable to expect that it will not burst into flames after its first day of use, as it sits idly in the barn. The "ordinary purpose" of a lawnmower is to cut grass without self-destructing after normal use. Under the circumstances alleged in the third amended complaint, we conclude that Barton states a valid cause of action for breach of warranty.

In his final argument, Barton contends that the third amended complaint states a cause of action against the appellees for negligence.[6] We agree in part.

The third amended complaint alleges that Kohler was negligent with regard to the lawnmower engine for failing to use proper design procedures, failing to use proper manufacturing procedures, failing to test the component parts, and failing to warn purchasers or ultimate users about proper procedures for assembling, inspecting, repairing and maintaining the lawnmower. The third amended complaint makes the same allegations against Husqvarna with regard to all components of the lawnmower other than the engine. Finally, the third amended complaint alleges that Lowe's was negligent for failing to include proper instructions as to the lawnmower's use and maintenance. The trial court held that the third amended complaint failed to identify any duty that these appellees breached.

In one respect, the trial court is correct: the claims against Husqvarna and Kohler for negligent failure to test the product are not viable, because such claims are encompassed within either a claim for strict liability or negligence in design. *Viguers v. Philip Morris USA, Inc.*, 837 A.2d 534, 541 (Pa.Super.2003).

_____

[6] The third amended complaint includes a negligence claim against Husqvarna in Count I, against Kohler in Count IV and against Lowe's in Count VII.

- 14 -

We turn to Barton's claims of negligent design and negligent manufacturing against Husqvarna and Kohler. To prevail in a negligence action, the plaintiff must show that the defendant had a duty to conform to a certain standard of conduct, that the defendant breached that duty, that such breach caused the injury in question, and actual loss or damage. *Phillips v. Cricket Lighters*, 841 A.2d 1000, 1008 (Pa.2003)). The court must weigh five factors in determining whether the defendant has a duty to the plaintiff: (1) the relationships between the parties; (2) the social utility of the defendant's conduct; (3) the nature of the risk imposed and foreseeability of the harm incurred; (4) the consequences of imposing a duty upon the defendant; and (5) the overall public interest in the proposed solution. *Althaus v. Cohen*, 756 A.2d 1166, 1169 (Pa.2000). No one of these factors is dispositive. Rather, "a duty will be found to exist where the balance of these factors weighs in favor of placing such a burden on a defendant." *Phillips*, 841 A.2d at 1008–09.

With regard to Husqvarna and Kohler, we evaluate the five *Althaus* factors as follows. First, there is a relationship between Husqvarna and Kohler, on one hand, and Barton on the other, because Barton is the purchaser of the lawnmower (and engine). This weighs in favor of the existence of a duty to Barton. *Phillips*, 841 A.2d at 1009 (in action for negligent design of butane lighter, "there was clearly a relationship between Robyn, as the purchaser of the butane lighter, and [the manufacturers].

Thus, as to the negligence claim springing from Robyn's death, this prong weighs in favor of finding a duty").

Second, the utility of lawnmowers is obvious, but a lawnmower outfitted with safeguards against overheating has even greater utility. This weighs in favor of the existence of a duty to Barton. *Cf. Phillips*, 841 A.2d at 1010 (social utility of butane lighter was clear, but lighter which prevented small children from creating a flame would have even greater utility).

The third prong of the duty analysis requires the court to balance the social utility of a design against the extent and foreseeability of the harm that would result in its absence. *Althaus*, 756 A.2d at 1170. "A duty arises only when one engages in conduct which foreseeably creates an unreasonable risk of harm to others." *R.W. v. Manzek*, 888 A.2d 740, 747 (Pa.2005). Given Barton's allegations that the lawnmower caught fire or exploded after its first use while it stood in a barn, it is fair to say, at least at the pleadings stage, that the design or manufacture of the lawnmower or engine foreseeably creates an unreasonable risk of harm to others. This weighs in favor of the existence of a duty to Barton.

The fourth *Althaus* factor requires us to consider the consequences of imposing a duty on Husqvarna or Kohler. At least at the pleadings stage, it seems reasonable to conclude that alternative design or manufacturing safeguards against overheating would not be cost-prohibitive, and that these

- 16 -

appellees could spread the additional costs to its consumers. This weighs in favor of the existence of a duty to Barton.

The fifth **Althaus** factor, the public interest, weighs in favor of the existence of a duty to Barton, because the public has a strong interest in minimizing the risk of harm that lawnmowers present to persons and property.

Because all five factors favor the existence of a duty to Barton, the third amended complaint adequately alleges that Husqvarna has a duty to design and manufacture a safe lawnmower, and Kohler has a duty to design and manufacture a safe engine.

For much the same reasons, the third amended complaint adequately alleges that all appellees have a duty to include instructions as to the lawnmower's proper use and maintenance. There is a relationship between the appellees on the one hand and Barton, as the purchaser, on the other. A lawnmower with instructions as to proper use and maintenance has greater utility than a lawnmower without such instructions. The lack of such instructions foreseeably creates a risk of harm to others through fire loss. The cost to the appellees of including instructions is not great. Finally, inclusion of instructions will benefit the public's interest in minimizing the risk of harm that lawnmowers present to persons and property. **See generally Lance v. Wyeth**, 85 A.3d 434, 459-60 (Pa.2014) ("the law of negligence establishes a duty, on the part of manufacturers, which can be

viewed on a continuum from the requirements of: a warning of dangers, through a stronger warning if justified by the known risks, through non-marketing or discontinuance of marketing when it becomes or should become known that the product simply should not be used in light of its relative risks. We agree ... that this entire continuum is within the scope of the general framework of the applicable duty of care").

While the third amended complaint adequately pleads breach of the foregoing duties of care, this does not foreclose the appellees from challenging the existence of a duty of care, or a breach thereof, at summary judgment or at trial. *Phillips* held that the butane lighter presented a foreseeable risk of harm, the third *Althaus* factor, based in part on evidence adduced during discovery that fires caused by children playing with butane lighters caused 120 deaths and 750 other injuries per year. *Phillips*, 840 A.2d at 1009. The *Phillips* court's focus on this detail indicates that evidence submitted during discovery or trial potentially can affect the determination of whether the appellees have a duty of care towards Barton or whether they breach this duty.

For these reasons, we reverse the order sustaining the appellees' preliminary objections and dismissing the third amended complaint with prejudice, and we remand for further proceedings in accordance with this opinion.

Order reversed. Case remanded for further proceedings in accordance with this opinion. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/24/2015