**Antonio HATCHER, Plaintiff,**

v.

**SCM GROUP NORTH AMERICA, INC., Defendant.**

**CIVIL ACTION No. 15-1630**

United States District Court, E.D. Pennsylvania.

Signed March 1, 2016

Order Denying Reconsideration March 30, 2016

---

**29.** Ex. 2 to Def. Lentz's Motion to Dismiss at 16-17, Doc. No. 22.

**30.** *Id.*

Brandon A. Swartz, Bryan Michael Ferris, Scott Eric Diamond, Swartz Culleton PC, Newtown, PA, for Plaintiff.

James D. Meadows, Balch & Bingham LLP, Atlanta, GA, John M. Donahue, John J. Hatzell, Jr., Strachan & Hatzell, Philadelphia, PA, for Defendant.

## MEMORANDUM

Schiller, District Judge.

Antonio Hatcher injured three fingers while working with an industrial woodworking machine and sued the machine manufacturer, SCM Group North America, Inc. ("SCM"), for breach of warranty, defective manufacturing, defective design and failure to warn.

SCM has moved for summary judgment. For the following reasons, this Court will grant summary judgment.

## I. BACKGROUND

Hatcher was injured on September 27, 2014, at the Timberlane, Inc., plant in Montgomeryville, Pennsylvania, where he was a machinist. (Def.'s Statement of Undisputed Facts ¶¶ 2, 26.) He was feeding a piece of wood into an industrial woodworking machine called a T130 Shaper when his hand slipped, causing three fingers to strike the spinning blade. (Id. ¶¶ 1-2.) The entire incident was captured on camera. (Id. ¶ 3.)

### A. T130 Shaper

The T130 Shaper is a multipurpose woodworking machine made by SCM. (Id. ¶ 6.) Timberlane purchased this machine at an auction in the late 1980s. (Id. at ¶ 7; Def.'s Mem. at 22.) The T130 Shaper's safety devices include: (1) two wooden fences on the left and right sides of the blade to provide support while feeding wood into the machine; and (2) a spring steel safety guard ("blade guard") that partially covers the spinning blade. (Def.'s Statement of Undisputed Facts ¶¶ 8-9, 14, 16.) The fence system has an opening in the middle where the blade located. (Id. ¶ 10.) The blade guard fits into pre-drilled holes on the fence system above the blade. (Id. ¶ 16.)

The fence system and the blade guard are adjustable and removable. (Id. ¶¶ 17, 19.) The blade guard is removable because it cannot be used for some applications. (Id. ¶ 17.) The operator must reposition the blade guard for each different application to ensure that the blade is exposed no more than necessary. (Id. ¶ 14.)

On the front of the machine, there is a black warning label that states, in capital letters, "DON'T RUN THE MACHINE WITHOUT NECESSARY SAFETY GUARDS." (Id. ¶ 20.) The accompanying operation and maintenance manual explains in detail how to use and assemble each of the safety guards, including the fence system and the blade guard. (Id. ¶ 16.) The manual warns, "Before starting machine, make sure all guards ´ are in place." (Id. ¶ 21.)

### B. September 27, 2014 Accident

On September 27, 2014, the day of the accident, Hatcher volunteered to help his coworker, Nathan Try, operate the T130 Shaper. (Pl.'s Statement of Disputed Facts ¶ 26.) Try set up the machine by inserting the cutterhead at the correct height and adjusting the fences to the correct depth. (Def.'s Statement of Undisputed Facts ¶¶ 30-32.) The fences were configured in the "zero-clearance" position for maximum safety, but the blade guard was not in use. (Id. ¶ 32; Pl.'s Statement of Disputed Facts ¶ 32.)

Hatcher began feeding a plank of cedar wood into the machine. (Def.'s Statement of Undisputed Facts ¶ 33.) The plank was 3/4 of an inch thick, leaving 1/8 of an inch of the spinning blade exposed above the surface of the plank as the plank passed

through the blade. (*Id.*) Hatcher had completed roughly 25% of the cut on one side of the plank when his hand slipped. (*Id.*) The tips of three fingers made contact with the blade, causing open fractures and lacerations to the index, middle and ring fingers on his left hand. (*Id.* ¶ 35; Pl.'s Mem. at 2.)

### C. Training, Knowledge and Safety Precautions at Timberlane, Inc.

Timberlane hired Hatcher three months before the accident to operate the beam saw in the machine shop. (Def.'s Statement of Undisputed Facts ¶ 26.) Although Hatcher had extensive experience with power tools, he had operated the T130 Shaper only once before the accident. (Pl.'s Add'l Facts ¶ 1.) Hatcher did not receive any formal training on the machine, aside from a demonstration with verbal instructions by Try, the primary operator of the T130 Shaper, on the day of the accident. (*Id.* ¶ 4.)

Before the accident, neither Hatcher nor Try had ever read the operating manual, which explains in detail how to use the necessary safety guards, including the blade guard; Hatcher also admits he never read the warning on the machine that stated, "DON'T RUN THE MACHINE WITHOUT NECESSARY SAFETY GUARDS." (*Id.* ¶¶ 36, 37; Pl.'s Add'l Facts ¶ 4.) Moreover, Hatcher, Try and Jeffrey Crescenzo, Timberlane's plant manager, have each stated in depositions that they never knew about the existence of the blade guard, which was not in use at the time of the accident. (*Id.* ¶ 6.) Aside from Hatcher's injuries, Timberlane has not had any problems with the machine since purchasing it at an auction over twenty-five years ago. (Def.'s Statement of Undisputed Facts ¶ 40.) Crescenzo and Try testified that they still believe, despite the accident, that the machine is safe to use without the blade guard, and that it was set up properly on the day of the accident. (Try Dep. at 49:3-8; Crescenzo Dep. at 32:5-9.) For his part, Hatcher states that the blade guard would have prevented the injury, and he claims that he would not have used the machine without the blade guard if he had known it existed. (Def.'s Statement of Facts ¶¶ 38, 41.)

## II. STANDARD OF REVIEW

Summary judgment is appropriate when the record discloses no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In reviewing the record, "a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Armbruster v. Unisys Corp.,* 32 F.3d 768, 777 (3d Cir.1994). The moving party bears the burden of showing that the record reveals no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson,* 477 U.S. at 247, 106 S.Ct. 2505. Once the moving party has met its burden, the nonmoving party must go beyond the pleadings to set forth specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585–86, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505. "Such affirmative evidence—regardless of whether it is direct or circumstantial—must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." *Williams v. Borough of W. Chester,* 891 F.2d 458, 460–61 (3d Cir.1989).

A court may not consider the credibility or weight of the evidence in deciding a motion for summary judgment. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir.1992). Nonetheless, a party opposing summary judgment must do more than rest upon mere allegations, general denials, or vague statements. *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir.1991). If the nonmoving party's evidence "is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505.

## III. DISCUSSION

Hatcher initially presented four claims in the Complaint: (1) breach of express and implied warranties; (2) defective manufacturing; (3) defective design; and (4) failure to warn. Hatcher now concedes there was no manufacturing defect, and he does not dispute SCM's evidence that the breach of warranty claim is time barred. Additionally, Hatcher fails to distinguish between the defective design claim and failure-to-warn claim, offering no evidence to support an independent defective design claim. His failure-to-warn claim likewise fails because the danger of the spinning blades was open and obvious, and the existing warnings adequately addressed the danger of operating the machine without safety guards. Accordingly, this Court will grant summary judgment to SCM.

### A. Breach of Express and Implied Warranties

■ Hatcher alleged in the Complaint that SCM "violated its implied and express warranties to [him] by designing, manufacturing, distributing and selling a [defective machine]." (Compl. ¶ 15.) This claim is barred by the statute of limitations, because Hatcher filed this lawsuit more than four years after Timberlane purchased the machine. Under Pennsylvania law, the statute of limitations for breach of express

or implied warranties is four years. 13 Pa. Cons. Stat. § 2725(a), (b). The limitations period begins when the seller tenders the goods. *Id.*; *see also Nationwide Ins. Co. v. Gen. Motors Corp.*, 533 Pa. 423, 625 A.2d 1172, 1174 (1993) ("[A] breach of warranty action accrues on, and suit must be filed within four years of, the date the seller tenders delivery of the goods, even if the breach is not apparent until after delivery has been tendered."). Here, Timberlane purchased the T130 Shaper at an auction in the late 1980s, and Hatcher did not sue until March 30, 2015. (Def.'s Mem. at 22.) Therefore, the Court will grant summary judgment to SCM on the breach of warranty claims.

### B. Defective Manufacturing

■ In the Complaint, Hatcher alleged that the T130 Shaper was "defectively manufactured." (Compl. ¶ 9.) Hatcher now admits, however, that "[T]here was nothing mechanically wrong with the Shaper and it did not malfunction." (Def.'s Statement of Undisputed Facts ¶ 39; Pl.'s Statement of Disputed Facts ¶ 39.) In the same vein, Hatcher's co-workers testified that the machine worked properly and never malfunctioned. (Def's Statement of Undisputed Facts ¶ 40.) Hatcher has not countered this evidence. Therefore, the Court will grant summary judgment to SCM as to the defective manufacturing claim.

### C. Defective Design

■ Hatcher fails to produce any evidence to support his defective design claim, relying to his detriment on an unsworn expert report prepared by Craig Clauser, an engineer, which conflates failure-to-warn defects with design defects. (Pl.'s Mem. Ex. 4 [Clauser Rep.].) There are two problems with Clauser's report. First, this report is not competent for consideration at summary judgment, because

it provides neither an affidavit nor an acceptable alternative "subscribed in proper form as true under penalty of perjury to substitute for an affidavit." Fed. R. Civ. P. 56(c) advisory committee's note to 2010 amendment; *see also* 28 U.S.C. § 1746; *Burrell v. Minnesota Min. Mfg. Co.*, Civ. A. No. 08–87293, 2011 WL 5458324 at *1 (E.D.Pa. June 9, 2011). The expert report is signed without any further attestation, which is not sufficient under the Federal Rules. *See Burrell*, 2011 WL 5458324, at *1 n. 1.

Second, even if the Court considered Clauser's report, it offers no evidence to support a defective design claim that is distinct from the failure-to-warn claim. In particular, Hatcher relies on a passage from the report in which Clauser states that "the shaper was defectively designed in that it did not include a clear and obvious warning." (Clauser Rep. at 3.) The failure to "include a clear and obvious warning" is a failure-to-warn claim. While Pennsylvania courts in the past have treated failure-to-warn claims as a category of defective design claims, this does not mean that every failure-to-warn claim automatically gives rise to a supplemental design defect claim. *See Dambacher v. Mallis*, 336 Pa.Super. 22, 485 A.2d 408, 426 (1984). Here, Hatcher offers no evidence of defective design beyond the allegations in the Complaint. Therefore, the Court will grant summary judgment to SCM as to the defective design claim.

**D. Failure to Warn**

Pennsylvania recognizes strict liability for failure to warn under the Second Restatement of Torts. *See Pavlik v. Lane Ltd.*, 135 F.3d 876, 881 (3d Cir.1998). According to the Third Circuit, "[A]n otherwise properly designed product may still be unreasonably dangerous (and therefore 'defective') for strict liability purposes [in Pennsylvania] if the product is distributed without sufficient warnings to apprise the ultimate user of the latent dangers in the product." *Id.* (citing Restatement (Second) of Torts § 402A). To prevail under strict liability, a "plaintiff must prove (1) that the product was defective, (2) that the defect existed when it left the hands of the defendant, and (3) that the defect caused the harm." *Riley v. Warren Mfg., Inc.*, 455 Pa.Super. 384, 688 A.2d 221, 224 (1997). In a failure-to-warn case, the threshold determination is whether the product is defective for lack of sufficient warnings. A plaintiff therefore must show that the product was sold without sufficient warnings to "adequately notif[y] the intended user of the unobvious dangers inherent in the product." *Mackowick v. Westinghouse Elec. Corp.*, 525 Pa. 52, 575 A.2d 100, 102 (1990). Furthermore, he or she may recover only if "the lack of warning rendered the product unreasonably dangerous." *Barton v. Lowe's Home Ctrs., Inc.*, 124 A.3d 349, 355 (Pa.Super.Ct.2015).

### 1. Deciding the adequacy of a warning after

Tincher The Pennsylvania Supreme Court's recent decision in *Tincher v. Omega Flex, Inc.*, 104 A.3d 328 (Pa.2014), has created some confusion regarding the respective roles of the judge and the jury in making the initial determination about the adequacy of a warning. Before *Tincher*, it was reasonably well settled in Pennsylvania that the adequacy of a warning was a question of law for the court under *Azzarello v. Black Bros. Co.*, 480 Pa. 547, 391 A.2d 1020 (1978) and *Mackowick v. Westinghouse Electric Corp.*, 525 Pa. 52, 575 A.2d 100 (1990). In *Azzarello*, the Pennsylvania Supreme Court created a two-step procedure for adjudicating defective design claims: first, the court determines whether recovery is justified under the plaintiff's averment of the facts; second, if the court determines that recovery is justi-

fied under those facts, the jury decides whether the facts alleged by the plaintiff are true. 391 A.2d at 1026. In *Mackowick*, the Pennsylvania Supreme Court extended *Azzarello* to failure-to-warn claims, holding that, "The determinations of whether a warning is adequate and whether a product is 'defective' due to inadequate warnings are questions of law to be answered by the trial judge." 575 A.2d at 102.

In *Tincher*, the Pennsylvania Supreme Court overruled *Azzarello* as applied to defective design claims, holding that the threshold determination of whether a product is defectively designed is an issue "for the finder of fact, whether that finder of fact is judge or jury." *Tincher*, 104 A.3d at 407. Accordingly, the court in *Tincher* held that the question of defectiveness in design should be "removed...from the jury's consideration only where it is clear that reasonable minds cannot differ on the issue." *Id.* Citing judicial restraint, however, the court purposely left undecided whether this holding extends to failure-to-warn claims. *Id.* at 409 ("We recognize...that the decision to overrule *Azzarello*...in relation to claims of a product defective in design may have an impact upon other foundational issues regarding manufacturing or warning claims [but] these considerations and effects are outside the scope of the facts of the dispute.") Indeed, just last month, the Pennsylvania Supreme Court granted allocatur in a case that may resolve whether *Tincher* extends to failure-to-warn claims. Specifically, the question on appeal in *Amato v. Bell & Gosset, Clark–Reliance Corp.*, is: "Whether, under the Court's recent decision in *Tincher*...a defendant in a strict-liability claim based on a failure-to-warn theory has the right to have a jury determine whether its product was unreasonably dangerous [because of inadequate warnings]." 130 A.3d 1283, 1283, 2016 WL 381069 at *1 (Pa.2016). Currently, however, the Pennsylvania Supreme Court has not extended *Tincher* to failure-to-warn claims. Therefore, this Court will continue to apply *Mackowick* in failure-to-warn cases, which requires the Court to make the initial determination on the adequacy of the warning.

### 2. The adequacy of the warning on the T130 Shaper

 To determine whether a warning is sufficient, courts under *Mackowick* must decide whether the warning "adequately notifies the intended users of the *unobvious* dangers inherent in the product." 575 A.2d at 102. To this end, the Court should ask: (1) whether the dangers are obvious; and (2) if not, whether the warning adequately notifies intended users of any unobvious dangers inherent in the product. There is no duty to warn of obvious dangers, and "[t]he duty to adequately warn does not require the manufacturer to educate a neophyte in the principles of the product." *Id.*

 The first question is whether the dangers inherent in the T130 Shaper were open and obvious. Certainly the danger posed by the spinning blade was open and obvious and required no warning. Courts in Pennsylvania and other jurisdictions have held in similar situations that spinning blades pose an obvious hazard. In *Riley v. Warren Manufacturing, Inc.*, the Pennsylvania Superior Court found that there was no duty to warn, because, "the hazard in question, i.e., the blades, was obvious and known to the commercial grain haulers who used the product." 455 Pa.Super. 384, 688 A.2d 221 n. 6 (1997). In *Hagans v. Oliver Machinery Co.*, the Fifth Circuit stated that, "One can imagine no more obvious danger than that posed by the jagged edge of a circular saw blade spinning at 3600 revolutions per minute." 576 F.2d 97, 102 (5th Cir.1978); *see also Fletcher v. Raymond Corp.*, 424 Pa.Super. 605, 623 A.2d 845 (1993) (holding that a

forklift manufacturer has no duty to warn users not to ride on the forklift without holding onto the sides).

Even if the danger posed by the spinning blade was obvious, Hatcher argues, the danger of operating the machine without the blade guard was not obvious. He points out that nobody at Timberlane knew that the blade guard existed, and he contends that SCM had a duty to warn users of the increased danger posed by operating the machine without the blade guard. (Pl.'s Mem. at 10.) For the purposes of this motion, the Court will assume that neither the absence of the blade guard nor the increased risk of operating the machine without the blade guard was obvious. However, a product is only defective for lack of warnings if it is "unreasonably dangerous" without warnings. *Barton*, 124 A.3d at 355. The record shows, and Hatcher does not dispute, that Timberlane employees used the machine for twenty-five years without the blade guard without incident. (Def.'s Statement of Undisputed Facts ¶ 40.) In fact, Hatcher does not provide any admissible evidence that the T130 Shaper was unreasonably dangerous without the blade guard. For this reason, this Court would grant summary judgment to SCM whether or not the Pennsylvania Supreme Court extended *Tincher* to failure-to-warn claims, because Hatcher has not introduced sufficient evidence for a jury to find that the product was unreasonably dangerous without a warning.

More importantly, SCM provided adequate warnings. In particular, the warning on the machine, "DON'T RUN THE MACHINE WITHOUT NECESSARY SAFETY GUARDS," was sufficient to alert the operator that the machine was accompanied by safety guards. This warning called attention to the existence of the safety guards, and the manual explained in appropriate detail how to use each of them, including the blade guard. (*Id.* ¶¶ 15-16.)

Hatcher admits that he never read the existing warnings on the machine or the manual, even though he knew the manual was available at the plant. (*Id.* ¶ 37.) Hatcher admits that if he had read the manual, he would have known how to use the blade guard. (*Id.* ¶ 38.)

Even though he did not read the existing warnings or the manual, Hatcher argues that SCM should have provided pictorial warnings, relying, for this argument, on Clauser's report, which is not competent for consideration for the reasons described above. (Clauser Rep. at 3.) Even if the report were competent for consideration, the alternate warnings suggested by Hatcher are only useful if the current warning and the accompanying manual are "blatantly ignored." *Davis v. Berwind Corp.*, 547 Pa. 260, 690 A.2d 186, 190 (1997). As the Pennsylvania Supreme Court stated in *Davis v. Berwind Corp.*, Hatcher is "in effect suggesting that we require a manufacturer to warn against dangers that may arise if the stated warnings are not heeded." *Id.* at 191. Finally, there is a good reason that manufacturers do not simply put all of the information on the manual onto warning stickers on the machine. In a similar case, a Pennsylvania court held that duplicating the instructions from the manual onto a machine could "create adverse consequences to potential users...if such a single warning would diminish the likelihood of an operator reading the manual so as to become aware of all of the safety requirements." *Mitchell v. Modern Handling Equip. Co.*, Civ. A. No. 2637, 1999 WL 1825272, at *5 (Pa. Com.Pl. June 11, 1999), *aff'd*, 748 A.2d 1260 (Pa.Super.Ct.1999).

This Court holds that Hatcher cannot recover for a failure to warn because the danger of the spinning blade was obvious, precluding any duty to warn. Moreover, the warnings provided on the machine and

in the accompanying manual were adequate to alert the operator of any unobvious dangers in using the machine without the blade guard.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is granted. An order consistent with this Memorandum will be docketed separately.

## MEMORANDUM ON RECONSIDERATION

On March 1, 2016, the Court granted summary judgment in favor of SCM Group North America ("SCM"). Presently before the Court is Plaintiff's Motion for Reconsideration or, in the alternative, Motion to Stay Defendant's Motion for Summary Judgment pending the Pennsylvania Supreme Court's decision in *Amato v. Bell & Gossett, Clark–Reliance Corp.*, 130 A.3d 1283(Pa.2016). Hatcher argues that the Court made two clear errors of law and fact in the March 1, 2016 Memorandum: (1) excluding Plaintiff's expert report from consideration; and (2) overlooking the testimony of Jonathan Bagby, a senior employee at SCM. In the alternative, Hatcher asks the Court to vacate its decision and stay this litigation until the Pennsylvania Supreme Court decides *Amato*, which will address: "Whether, under the Court's recent decision in *Tincher v. Omega Flex, Inc.*, 104 A.3d 328 (Pa.2014), a defendant in a strict-liability claim based on a failure-to-warn theory has the right to have a jury determine whether its product was unreasonably dangerous [because of inadequate warnings]." 130 A.3d at 1283, 2016 WL 381069, at *1. For the reasons set forth below, the Court will deny Hatcher's motion.

## I. STANDARD OF REVIEW

The purpose of a motion to alter or amend a judgment under Federal Rule of Civil Procedure 59(e) is "to correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985). Out of consideration for finality and judicial economy, courts should grant motions under Rule 59(e) sparingly. *Ruscavage v. Zuratt*, 831 F. Supp. 417, 418 (E.D.Pa.1993). A motion to alter or amend a judgment may be granted only for one of the following reasons: (1) an intervening change in controlling law; (2) the discovery of new evidence not available previously; or (3) the need to correct a clear error of law or to prevent manifest injustice. *Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir.1999). A party may not use a Rule 59(e) motion to relitigate old matters or to present evidence that could have been offered earlier. *Palladino v. Governor of Pa.*, 589 Fed. Appx. 61, 64 (3d Cir.2014).

## II. DISCUSSION

### A. Clauser's Expert Report Was Not Competent for Consideration

The Court excluded Craig Clauser's expert report, because it was not properly supported by an affidavit or substitute declaration described in Federal Rule of Civil Procedure 56(c) or 28 U.S.C. § 1746. *See Burrell v. Minn. Mining Mfg. Co.*, Civ. A. No. 08–87293, 2011 WL 5458324, *1 (E.D.Pa. June 9, 2011) ("Given that the expert reports submitted in this case disputing facts were merely signed and not supported by affidavits or declarations, the reports are 'not competent to be considered' [on] Summary Judgment"). The Third Circuit has previously held that excluding an unsworn expert report on summary judgment was proper, where, as here, the plaintiff failed to promptly correct the deficiency: "While evidence should not be excluded on summary judgment on hypertechnical grounds, we are swayed in this case by the fact that defendants raised

this issue...and plaintiff did nothing to correct the error." *Fowle v. C & C Cola, a Div. of ITT–Cont'l Baking Co.*, 868 F.2d 59, 67 (3d Cir. 1989). SCM raised this issue in support of its motion for summary judgment, but Hatcher did not address it until now.

■■■ In the present motion, Hatcher does not meet the stringent standard necessary for the Court to alter or amend its judgment. A motion for reconsideration may be granted only where there is: (1) an intervening change in the controlling law; (2) "new evidence that was not available when the court granted the motion for summary judgment;" or (3) a clear error of fact or law. *Max's Seafood Cafe*, 176 F.3d at 677. Hatcher succeeds on none of these grounds. First, the law has not changed since the court granted summary judgment on March 1, 2016. Second, Hatcher offers no evidence that was previously unavailable at the time the Court granted summary judgment. In his motion for reconsideration, Hatcher seeks, for the first time, to introduce testimony from the deposition of the expert, Craig Clauser, on February 9, 2016, in which he confirms the contents of the report. (Pl.'s Mem. Supp. Mot. Reconsideration 3.) This evidence was available three weeks before the Court granted summary judgment, but Hatcher failed to introduce it while the motion for summary judgment was pending.

■■■ Finally, Hatcher fails to establish that this Court committed a "clear error" of law in excluding the report. He does not cite a single case pertaining to expert reports to support his position, instead relying by analogy on two cases concerning the consideration of hearsay evidence on summary judgment. *See Shelton v. Univ. of Med. & Dentistry of N.J.*, 223 F.3d 220, 223 n. 2 (3d Cir.2000) (noting that statements can be considered on a motion for summary judgment if they could be admissible in some form at trial). This analogy is

unpersuasive, in particular because there are cases in this Circuit specifically excluding unsworn expert reports on summary judgment. *See, e.g., Fowle*, 868 F.2d at 67. While the 2010 Amendments to the Federal Rules of Civil Procedure removed the affidavit requirement, the Third Circuit has explained that, even now, "[u]nsworn declarations may [only] substitute for sworn affidavits where they are made under penalty of perjury and otherwise comply with the requirements of 28 U.S.C. § 1746." *Ray v. Pinnacle Health Hosps., Inc.*, 416 Fed.Appx. 157, 164 n. 8 (3d Cir. 2010). Simply signing the document is not sufficient for compliance with 28 U.S.C. § 1746. *See Burrell*, 2011 WL 5458324, *1. Therefore, the exclusion of the expert report was not a clear error of law.

**B. Jonathan Bagby's Deposition Testimony Is Not Material**

■■■ Hatcher claims that the Court "apparently overlooked" the deposition testimony of Jonathan Bagby, an officer at SCM. According to Hatcher, "Mr. Bagby's admission that the warning decal affixed to the subject shaper could cause confusion...alone is sufficient to illustrate that a genuine issue of material fact exists as to the adequacy of the warnings." (Pl.'s Mem. Supp. Mot. Reconsideration 7.) Hatcher relies in particular on this passage:

> Q. So just by looking at [the warning label on the machine that states, "DON'T RUN THE MACHINE WITHOUT NECESSARY SAFETY GUARDS"], if you didn't know more about the industry, can you appreciate how somebody would think that they have the necessary safety guards in place?
>
> A. I can see that.

(*Id.* at 6; Bagby Dep. at 68:17-22.) In fact, the Court considered Bagby's testimony, and concluded that it failed to create a

genuine issue of material fact for at least two reasons. First, Plaintiff's counsel only asked whether someone who "didn't know more about the industry" might find the warning confusing. This qualification does not apply to Hatcher, who was not a newcomer to the industry, even if he lacked extensive experience operating the T130 Shaper. (Def.'s Statement of Undisputed Facts ¶¶ 22-28.) By the same token, "[t]he duty to adequately warn does not require the manufacturer to educate a neophyte in the principles of the product." *See Mackowick v. Westinghouse Electric Corp.*, 525 Pa. 52, 575 A.2d 100, 102 (1990).

■ Second, and more importantly, the Court must consider all of the warnings provided with the product, not just the on-product warnings, when evaluating whether a manufacturer is strictly liable for failure to warn. *See Davis v. Berwind Corp.*, 547 Pa. 260, 690 A.2d 186, 190–191 (1997) (evaluating on-product warnings and operating manual warnings together). In addition to the on-product warnings, the T130 Shaper came with an operating manual that explained in detail how to use the safety guards. (Def.'s Statement of Undisputed Facts ¶¶ 15-21.) Hatcher admits that he knew Timberlane, Inc., had manuals for virtually all of its machines and that he could have asked to review the manual for the T130 Shaper. (*Id.* ¶ 37.) He admits that he never read the manual or the on-product warnings. (*Id.* ¶¶ 36-37.) He further admits that if he had read the manual, he would have known how to use the blade guard. (*Id.* ¶ 38.) The Court concluded that the on-product warnings and the manual, in the aggregate, were sufficient to warn the user of any unobvious dangers in operating the product without safety guards, and to inform the user how to install those guards. The possibility of a dispute about the adequacy of one of the warnings alone is not sufficient to oppose summary judgment.

## C. The Pennsylvania Supreme Court's Decision in *Amato* Would Not Affect the Outcome of This Case

Finally, the Court will not prolong this litigation pending the outcome of the Pennsylvania Supreme Court's decision in *Amato*, because it would not affect the outcome of this case. Regardless of the ruling in *Amato*, summary judgment is proper if there is no genuine dispute of material fact such that "reasonable minds [cannot] differ on the issue." *Tincher*, 104 A.3d 328, 407. Here, without the expert report, there is no genuine dispute of material fact. Thus, the Court would grant summary judgment to SCM even if the Pennsylvania Supreme Court extended *Tincher* to failure-to-warn claims.

## III. CONCLUSION

For the foregoing reasons, Plaintiff's motion is denied. An order consistent with this Memorandum will be docketed separately.